IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LAMONTAY D. RIVERA,

    Defendant.

ORDER

18-cr-139-wmc-2

---

Taking into consideration the nature of the offense, as well as the defendant, Lamontay Rivera's, personal history and characteristics, this is to advise that I reject the plea agreement entered into by the parties under Fed. R. Crim. P. 11(c)(1)(C). (Dkt. #48.) Although the court is cognizant that it should not interject itself into plea negotiations, the district court must explain why it finds the agreement objectionable. *United States v. Kraus*, 137 F.3d 447, 453 (7th Cir. 1998).

At the outset, the court readily acknowledges the severity of defendant Rivera's and his co-defendant Britt's crime, having committed an armed robbery and no doubt terrorized two young women working at a local Subway shop. Similarly, consistent with the court's acceptance of the binding plea agreement as to co-defendant Britt, the court agrees that allowing both defendants to plead to armed robbery, in violation of 18 U.S.C. § 1951 under Count 1, is reasonable, particularly because it allows both defendants the benefits of the First Step Act that would otherwise be denied if found guilty of Count 2.

Where the court parts company with the parties is with the treatment of defendant Rivera as fungible with defendant Britt. Indeed, other than committing the same crime and both being young, African-American males, they present very different pictures under the statutory purposes of sentencing set forth in 18 U.S.C. § 3553(a).

First, while each had relatively limited criminal histories, with neither having spent any time in prison, Britt's past adult conviction for attempted armed robbery of a juvenile, along with Mark Parks, Jr. -- Parks fired three to four shots and the victim sustained three bullet wounds (two to his torso and one to his head) -- is of an entirely different character than Rivera's past convictions. Indeed, perhaps the most disturbing part of Britt's history is that he proceeded with a second armed robbery after already participating in such a horrific crime and outcome. As the court noted at Britt's sentencing, that fact alone justified the 84-month sentence agreed to by the parties.

In contrast, Rivera's adult convictions were for theft at the age of 17, for which he was required to pay court costs and a fine, a crime Britt had already committed many more times as a juvenile. At 18, Rivera was also convicted for operating while under the influence of a controlled substance, causing a serious accident involving a pedestrian. Without in any way minimizing the seriousness of that crime, and certainly not the injuries suffered by the pedestrian, a DUI is not in the same category as Britt's earlier attempted armed robbery. Similarly, Rivera's last adult crime involved a domestic dispute between the mother and grandmother of his child at the age of 19, for which he received 45 days jail. While serious, I would note that Britt, too, was charged with very similar conduct,

involving his grabbing the mother of his child "by the neck with both hands" and throwing her to the ground.

Second, the difference in the co-defendants' criminal history is reflected in their actions on tape during the Subway robbery, with Britt (the markedly shorter of the two defendants) leading the way into the establishment with his gun pointed directly and menacingly at the two clerks. In contrast, Rivera follows Britt through the door and immediately (and but for the circumstances, comically) falling to the ground. At no point does Rivera appear to point his gun at anyone. Instead, he follows Britt's lead throughout, initially, to the back of the store, and then forward again. At most, Rivera empties the cash register and directs one of the two victims to stand near the counter, again, without raising his gun. Certainly, each defendant's conduct is horrifying and inexcusable, particularly with respect to terrorizing the two, minimum wage counter clerks for $190. Still, Britt's leadership and more outrageous conduct once again differentiates him from Rivera.

Third, and arguably most important for sentencing, given the young ages of both defendants, there is an important distinction in their response to past punishment and opportunities to do better. In particular, when Rivera was removed from his mother's custody and placed in the Orion Group Home in Platteville, Wisconsin, he appeared to make substantial progress in school, in sports, and in participation in healthy, group activities. It was only when returned to his home in Madison that Rivera fell back into the same routine of drug and alcohol use, as well as running with a bad crowd.

(Presentence Investigation Report ¶¶ 72-73.) In contrast, Britt performed poorly whether placed with his mother, his grandmother, the Revive Group Home or the New Beginnings Group Home. (*Id.* ¶ 54.)

Obviously, unless Rivera is able to bring his alcohol and drug use under control, his past period of success may be a poor predictor of future success, nor do Britt's past failures on supervision guarantee future missteps, but it is in the court's view a marked distinction between the two co-defendants under § 3553(a).

Admittedly, judges tend to have difficulty with binding plea agreements under Rule 11(c)(1)(C), which is why they are generally disfavored and, in many courts, rejected out of hand. *See* Robert E. Scott and William J. Stuntz, *Plea Bargaining as Contract*, 101 Yale L J 1909, 1953-54 (1992) (explaining that the practice of using type C agreements "is discouraged or prohibited in many jurisdictions"); Frank H. Easterbrook, *Criminal Procedure as a Market System*, 12 J Legal Stud 289, 321 (1983) ("Although Rule 11 allows a bargain fixing a particular sentence, with the consent of the judge, this option is rarely used."). At least for now, however, this has not been this court's practice. Rather, as contemplated by the Rule, I will accept type C agreements where consistent with my statutory obligations as the sentencing judge. For all the reasons set forth above, I cannot in good conscience give the same sentence to defendant Rivera as I did to his co-defendant, Britt.

In light of this ruling, the clerk's office is directed to schedule an in-person status conference next week, at which the defendant will be offered the opportunity to withdraw his plea of guilty, and both sides will be offered the opportunity to withdraw the plea

agreement.

Entered this 6th day of June, 2019.

BY THE COURT:

_____
WILLIAM M. CONLEY
District Judge