IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                Plaintiff,

v.

LAMONTAY D. RIVERA,

                Defendant.

OPINION and ORDER

18-cr-139-wmc-2

---

On Friday June 7, 2019, this court rejected a plea agreement that would require it to impose a seven-year term of imprisonment on defendant Lamontay D. Rivera under Fed. R. Crim. P. 11(c)(1)(C). (Dkt. #79.) The actions of *both* defendnats were reprehensible and deserving of substantial punishment, including insistence on a § 924(c) conviction if the government so chose. But it did not. At that point, it is at least appropriate to ask whether the defendants should be treated identically under 18 U.S.C. § 3553(a), which requires that more be considered than the defendant's legal culpability alone. As the court explained in its original order, notwithstanding that both defendants committed the crime of armed robbery, the proposed agreement's identical treatment of Rivera with his co-defendant Johnell Britt appears to violate § 3553(a) in three different respects: (1) their criminal histories are *materially* different, particularly with respect to Britt's past adult conviction for attempted armed robbery involving a victim who sustained multiple gunshot wounds; (2) defendant Rivera's positive response to past supervision away from negative influences, in contrast to Britt's consistently poor to dismal

1

performance under supervision; and (3) defendants played demonstrably unequal roles during the charged robbery on August 10, 2018, with Britt entering first, a gun drawn and pointed directly at the victims, while Rivera ineptly followed with what may or may not have been a gun.

On Monday, June 10, the government filed a motion for reconsideration, which ignored the court's first concern, largely ignored the second, and overstated the record with respect to the third. (Dkt. #84.) On June 14, 2019, defendant's counsel filed his own motion for reconsideration, agreeing with the court's basis for distinguishing between Britt and Rivera, but representing that the rejected plea reflected the best obtainable result given the § 924(c) charge, the evidence against him and the government's intransigence. (Dkt. #89.) Indeed, the government makes the same point by explaining that the only options for Rivera are worse than the proposed plea agreement.

The law on this point is not yet settled, nor currently are the options the U.S. Attorney's Office *could* afford the defendant if it so chose, although it seems likely that the decision lies in the prosecutor's hands. "If the court rejects the Government's promised performance [typically a cap on the maximum sentence], then the agreement is terminated and *the defendant* has the right to back out of his promised performance (the guilty plea), just as a binding contractual duty may be extinguished by the nonoccurrence of a condition subsequent." *United States v. Hyde*, 520 U.S. 670, 677-78 (1997) (emphasis added). Similarly, Rule 11(c)(5) notes the court's obligation to give the *defendant* an opportunity to withdraw his plea of guilty. In contrast, Rule 11 does not even consider the impact of the court's decision to reject the plea agreement on the *government's* promised performance

should the defendant choose to maintain his plea. Similarly, most legal authority addresses the *defendant's* rights when the court rejects a plea agreement. *See, e.g., United States v. Adame-Hernandez*, 763 F.3d 818, 826 (7th Cir. 2014) (when the court rejects a plea agreement, it must give the defendant the chance to withdraw the plea, without comment about the government's obligation under the agreement (quoting *In re Ellis*, 356 F.3d 1198, 1207) (9th Cir. 2004))). *But see United States v. McGovern*, 822 F.2d 739, 743-44 (8th Cir. 1987) (rejecting defendant's argument that government is still bound by the terms of a 11(c)(1)(C) plea agreement after court rejected it since "an implicit condition of every plea agreement is its acceptance by the trial court").

The general focus on defendant's plea is unsurprising, given that for most of this country's history, an appropriate sentence for an individual defendant's crime has been largely indeterminate. As a result, the prosecutor's traditional bargaining chips have been to what the defendant would be allowed to plead and capping the length of the sentence that could be imposed. In this case, the government agreed to accept a plea to Count I *provided* Rivera received the same sentence had he pleaded to Count II (the § 924(c) count), thereby allowing some hope for a reduction in his sentence should he complete RDAP or another, theoretical First Step Act program, all while eliminating the risk of enhancement above 84 months for Count I. But if the defendant maintains his plea of guilty, and thereby meets his side of the bargain, why wouldn't the government fulfil its commitment to dismiss Count II, even if the *court chooses independently* not to be bound by a specific sentence, as it plainly has the discretion to do, especially when Rule 11(c)(5) is geared toward protecting defendant's rights. Guidance from the parties on this issue would be

3

helpful, including if the defendant wishes to maintain his plea and does the government really want to devote its resources and those of the court, as well as a lay jury, to obtain a guilty verdict on the 924(c) count to avoid a lower sentence for defendant Rivera should this court see fit.

Of course, the *first* question is whether the defendant wishes to withdraw his plea. If not, the court wishes to emphasize the disconnect between imposing identical sentences for co-defendants Rivera and Britt under § 3553(a) factors in light of the government's motion to reconsider. In disputing the court's view of the factual distinction between Rivera's and Britt's behavior during the robbery itself, the government teases out the facts about Rivera's involvement in the robbery more precisely than the court, directing it to still photographs from the video footage of the robbery, as well as a victim's statement that Rivera held a gun against her back. A careful review of the camera 3 footage shows that Rivera walked behind one of the victims while returning to the cash register, and he may have been holding an object that *may* have been a gun in his right hand (with dark gloves on, it is difficult to tell). Although that is a reasonable point to make, it is equally (if not more) reasonable to conclude that the victim's statement may (understandably) not have been completely accurate.

Specifically, the video shows not only that she was facing away from him, but also that his *left* hand is on her back. Moreover, on all of the videos, the only hand in which Rivera ever arguably held a gun was his right hand.[1]  Finally, while Rivera admitted at the

---

[1] Unlike Britt, who almost continually used his left hand to hold, brandish and point the gun at the victims, Rivera can be seen entering the restaurant with his right hand in his pocket, landing on his left hand after falling (although the reverse image in the window reflects the opposite), using

4

plea hearing that he (and in the context of the court's questioning, Britt) used a gun during the robbery, when stopped later by police only *one* gun was found, which the government asserts is similar to the one in Britt's hand on the video (and Rivera admitted was used in the robbery).

More importantly, the court further distinguished Rivera's behavior from Britt's based on the same video footage, which undeniably shows Britt to be the leader between the two from beginning to end, including continually brandishing the only firearm clearly visible on *any* of the videos. Britt was the first one into the restaurant with his gun raised and pursued the two victims. In contrast, Rivera entered second, almost immediately fell to the ground and followed behind him throughout the robbery, until it was time to leave. Similarly, Britt searched for and took any valuable items, and he supervised the victims and Rivera as they retrieved cash from the register. For that reason, while certainly equally culpable under the law and both deserving of a significant sentence, the court remains convinced that Rivera's behavior during the robbery was less outrageous (and demonstrably less enthusiastic) than his co-defendant.

The government also purports to disagree with the court's distinction between Rivera's and Britt's history and characteristics, but that argument is even less persuasive. Tellingly, the government ignores Britt's previous involvement in a different armed

---

his left hand to grab and swing around a counter, and finally reaching into the cash register with his left hand. Admittedly, Rivera *could* have switched a gun from one hand to the other while off camera in back of the store and then again in the few steps before reaching into the cash register, but this, too, seems unlikely. Alternatively, as the government suggests, he may at some point have raised his right hand (with a possible gun), but it never comes up far enough to be pressed against the victim's back on *any* footage.

5

robbery, in which the victim suffered *multiple gunshot wounds*, instead reciting back Rivera's criminal history and arguing that it is also serious and violent. While acknowledging as much, the court's point was that Britt's decision to engage in a second armed robbery after such tragic results rendered Rivera's criminal history *materially* less serious and violent than Britt's. The government does not even address this glaring distinction.

Finally, the government chooses to completely ignore the difference between the two defendants' performance on supervised release, to which both will sooner or later be subject. Unlike Britt (whose performance on supervision has been poor to abysmal), Rivera has shown a willingness and ability to succeed on supervision, at least when removed from the influence of his family and friends. This, too, is an important factor under § 3553(a) in arriving at an appropriate sentence as to these two defendants.

The government focuses primarily on what it could prove at trial, but that was not what troubled this court about the plea agreement. Indeed, if the court's obligation (or for that matter, the government's) were to determine Rivera's *guilt* as to the charges in the indictment, the government would be making excellent points. Instead, the parties asked the court to accept a binding plea agreement for purposes of *sentencing* Rivera, not determining his guilt. Indeed, it is unfortunate that the government's motion (and apparently its negotiations with defense counsel) appears to continue to ignore the court's main concern: Rivera and Britt, while equally culpable under the law for the reprehensible events that occurred on August 20, 2018, are very different defendants for sentencing purposes.

That said, the court will reserve on the parties' motions pending a hearing with

counsel and Rivera present.[2]

ORDER

IT IS ORDERED that the government's motion for reconsideration (dkt. #84) and defendant's motion for reconsideration (dkt. #89) are RESERVED. This matter is set for hearing, with defendant to appear in person, on July 3, 2019, at 1:00 p.m.

Entered this 25th day of June, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[2] As a final matter, the court will address footnote 4 in the government's brief in a more appropriate forum, except to observe that for whatever reason the data in this court over the last five years shows that *young* black men are substantially overrepresented in § 924(c) convictions relative to their percentage of the population, and that trend appears to be headed in the wrong direction. However, I hesitate to even make this observation in an opinion involving Rivera, since the issue here is *not* disproportionate treatment of young black men, but the problem of treating these two young black men as identical when they are anything but under § 3553(a).